```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                      :
                                                            :   Chapter 11
OLD CARCO LLC, et al.,                                      :
                                                            :   Case No. 09-50002 (SMB)
                                     Debtors.               :
------------------------------------------------------------X
                                                            :
MAKENNA BENNETT,                                            :
                                                            :
                                     Plaintiff,             :
                                                            :   Adv. Pro. No. 18-01035 (SMB)
           – against –                                      :
                                                            :
FCA US LLC, et al.,                                         :
                                                            :
                                     Defendants.            :
------------------------------------------------------------X
```

## MEMORANDUM DECISION
## DENYING MOTION TO DISMISS

**A P P E A R A N C E S:**

EISENBERG, GILCHRIST & CUTT
215 South State Street, Suite 900
Salt Lake City, Utah 84111

    Eric S. Olson, Esq.
        Of Counsel

*Attorneys for Plaintiffs*

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004

    Brian D. Glueckstein, Esq.
        Of Counsel

*Attorneys for Defendant FCA US LLC*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Plaintiff Makenna Bennett ("Plaintiff") filed an action seeking, *inter alia*, to recover compensatory damages from FCA US LLC f/k/a Chrysler Group, LLC ("New Chrysler") arising from a 2015 accident involving a 2004 Dodge Durango (the "Vehicle") in which she was a passenger.[1] New Chrysler has moved to dismiss the claims based on negligence and failure to warn as alleged in her second cause of action, arguing that they are barred by this Court's order (the "Sale Order")[2] approving the sale of substantially all of the assets of Old Carco LLC f/k/a Chrysler, LLC and its debtor affiliates (collectively "Old Chrysler") free and clear of all liens, claims and interests to New Chrysler. (*See Motion of FCA US LLC to Dismiss Complaint's Second Cause of Action*, dated Apr. 13, 2018 ("*Motion*") (ECF Doc. # 11); *see also FCA US LLC's Reply in Support of Its Motion to Dismiss Complaint's Second Cause of Action*, dated May 11, 2018 ("*Reply*") (ECF Doc. # 16).)[3] The Plaintiff opposes the *Motion*, contending that the Second Cause of Action asserts claims that are not barred by the Sale Order. (*See Memorandum in Opposition to Motion of FCA US LLC to Dismiss Complaint's Second Cause of Action*, dated Apr. 24, 2018 ("*Plaintiff's Opposition*") (ECF Doc. # 15).)

For the reasons that follow, the *Motion* is denied.

---

[1] The Plaintiff originally sought punitive damages as well, but dismissed her demand for punitive damages with prejudice. (ECF Doc. # 1, Ex. 53.)

[2] The Sale Order is attached as Exhibit A to the *Declaration of Brian D. Glueckstein in Support of FCA US LLC's Motion to Dismiss Complaint's Second Cause of Action*, dated Apr. 13, 2018 ("*Glueckstein Declaration*") (ECF Doc. # 12.)

[3] "ECF Doc. #" refers to the electronic docket in this adversary proceeding. "ECF Main Case Doc. #" refers to the electronic docket in Case No. 09-50002 (SMB).

## BACKGROUND

According to the Complaint,[4] the Plaintiff was a passenger in the front seat of the Vehicle when, on July 9, 2015, the tread/belt separated from the rear tire, the driver lost control and the Vehicle went off the road and rolled. (¶¶ 6, 9-10.)[5] The Plaintiff was wearing a seat belt, (¶ 17), but nonetheless sustained serious injuries as the result of the accident, including a broken neck and a spinal cord injury that left her paralyzed. (¶ 15.)

The Plaintiff commenced this action against New Chrysler on or about June 22, 2017 in the United States District Court for the District of Utah.[6] The Complaint alleges, in substance, that the Vehicle was not reasonably crashworthy due to defects in the design, manufacture, marketing, warning, assembly and/or testing. (¶¶ 51, 53, 57, 69.) It includes five causes of action: strict liability (First Cause of Action, ¶¶ 37-55), negligence (Second Cause of Action, ¶¶ 56-70), breach of express warranty (Third Cause of Action, ¶¶ 71-73), breach of implied warranty of merchantability (Fourth Cause of Action, ¶¶ 74, 72-73)[7] and breach of the implied warranty of fitness for a particular purpose (Fifth Cause of Action, ¶¶ 74-77).

New Chrysler filed a motion for partial summary judgment in the Utah District Court to dismiss, *inter alia*, the Plaintiff's conduct-based negligence and failure to warn

---

[4]    A copy of the Complaint is annexed as Exhibit D to the *Glueckstein Declaration*.

[5]    "(¶ _)" refers to the paragraphs in the Complaint.

[6]    The Complaint names as defendants numerous New Chrysler affiliates as well as some of the debtors in these chapter 11 cases (collectively, "Old Chrysler"). As used in this decision, New Chrysler refers to the entity that purchased substantially all of the assets of Old Chrysler pursuant to the agreements and the Sale Order described in the succeeding text.

[7]    These paragraphs were misnumbered, and the paragraph numbers repeat in the Third and Fifth Causes of Action.

claims, and subsequently filed a motion to transfer venue to allow this Court to interpret and enforce the Sale Order and the Master Transaction Agreement ("MTA") pursuant to which Old Chrysler sold substantially all of its assets to New Chrysler. On February 7, 2018, the Utah District Court issued a decision and order (the "Utah Decision")[8] granting New Chrysler's motion to transfer venue, and transferred the entire civil action to this Court. Because the Sale Order and MTA, as amended, only affected the legal viability of the Plaintiff's Second Cause of Action, the Court subsequently severed the Second Cause of Action, retained that claim pending the adjudication of the issues relating to the Sale Order, and transferred the balance of the action back to the Utah District Court. (*Order Severing Second Cause of Action and Transferring Remainder of Case*, dated Mar. 23, 2018 (ECF Doc. # 9).)

New Chrysler has moved to dismiss only the Second Cause of Action arguing that the Plaintiff's negligence claim, including the failure to warn claim, is barred by the Sale Order. To answer the question, it is necessary to consider the terms of the Sale Order and the MTA, as amended.

**A.    The Bankruptcy Sale**

On April 30, 2009, Old Chrysler filed these chapter 11 cases. That same day, Old Chrysler and New Chrysler entered into the MTA[9] by which New Chrysler agreed to purchase substantially all of the assets of Old Chrysler. The Bankruptcy Court approved

---

[8]    A copy of the Utah Decision is attached as Exhibit E to the *Glueckstein Declaration*.

[9]    A copy of the MTA is attached as Exhibit B to the *Glueckstein Declaration*.

the transaction set forth in the MTA with certain immaterial amendments, and the sale closed on June 10, 2009 the ("Closing Date").

The Sale Order authorized the transfer of the purchased assets "free and clear of all Claims except for Assumed Liabilities" (as defined in the MTA) and free of successor liability. (Sale Order ¶ 9.) It stated, in pertinent part:

> Except for the Assumed Liabilities expressly set forth in the Purchase Agreement or described therein or Claims against any Purchased Company, none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any Claim that (a) arose prior to the Closing Date, (b) *relates to the production of vehicles prior to the Closing Date* or (c) otherwise is assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. . . . Without limiting the foregoing, the Purchaser shall not have any successor, derivative or vicarious liabilities of any kind or character for any Claims . . . now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

(Sale Order ¶ 35 (emphasis added); *see also* ¶¶ 39, 42.) The MTA reinforced this limitation on assumed liabilities, and in particular, the exclusion of any liabilities relating to vehicles produced *and sold* by Old Chrysler prior to the Closing Date:

> **Assumption of Liabilities**. On the terms and subject to the conditions and limitations set forth in this Agreement, at the Closing, Purchaser shall assume, effective as of the Closing, and shall timely perform and discharge in accordance with their respective terms, the Assumed Liabilities and no others. For purposes of this Agreement, "Assumed Liabilities" means (without duplication) each of the following Liabilities of Sellers existing as of immediately prior to the Closing: . . .
>
> (h) all Product Liability Claims arising from the *sale after the Closing* of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing. . . .

(MTA § 2.08(h) (emphasis added).) The MTA broadly defined a Product Liability Claim as:

> any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, wrongful death or property damage resulting from exposure to, or any other warranty claims, refunds, rebates,

>   property damage, product recalls, defective material claims, merchandise returns and/or any similar claims, or any other claim or cause of action with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Old Chrysler].

(MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, at ¶ 36.)

Section 2.09 of the MTA enumerated the Excluded Liabilities. They essentially covered any liability that was not one of the Assumed Liabilities under the MTA. "[F]or avoidance of doubt," these included "all Product Liability Claims arising from the sale of Products or Inventory *prior* to the Closing," (MTA § 2.09(i) (emphasis added), and "all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising *prior* to or ongoing at the Closing." (MTA § 2.09(j) (emphasis added).) "Liabilities" was defined to mean "any and all debts, liabilities and obligations of any kind whatsoever, whether asserted or unasserted, accrued or fixed, contingent or absolute, determined or determinable, or otherwise, including those arising under any Law, Action or Governmental Order and those arising under any Contract." (MTA Definitions Addendum, at p. 87.) In short, the Sale Order and original MTA excluded any Liabilities, including Product Liability Claims, relating to any vehicle manufactured by Old Chrysler unless it was sold by New Chrysler.

Subsequent to the Sale Order, however, New Chrysler agreed to expand the category of Assumed Liabilities. By Stipulation and Order, dated Nov. 19, 2009 ("Amendment No. 4," and with the MTA, the "Amended MTA"), the parties amended section 2.08(h) to the MTA to expand New Chrysler's liability for Product Liability Claims. (ECF Main Case Doc. # 5988.) Under the Amended MTA, New Chrysler

assumed liability for post-Closing Date accidents involving vehicles manufactured and sold by Old Chrysler before the Closing Date. Assumed Liabilities now included:

> (i) all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing and (ii) all Product Liability Claims arising from the sale on or prior to the Closing of motor vehicles . . . solely to the extent such Product Liability Claims (A) arise directly from motor vehicle accidents occurring on or after Closing, (B) are not barred by any statute of limitations, (C) are not claims including or related to any alleged exposure to any asbestos-containing material or any other Hazardous Material and (D) do not include any claim for exemplary or punitive damages.

(Amendment No. 4, ¶ 1 (emphasis added).)[10] A corresponding change to section 2.09(i) of the MTA was made to exclude liability for "all Product Liability Claims arising from the sale of Products or Inventory on or prior to the Closing *that are not described in Section 2.08(h)*." (*Id.*, ¶ 2) (emphasis added.) Finally, paragraph 3 of Amendment No. 4 reiterated that except for the changes made by the amendment, the exclusion of liabilities under the original MTA remained in place:

> *Except as expressly provided herein*, all of the terms and provisions in the MTA are and shall remain in full force and effect, on the terms and subject to the conditions set forth therein. This Amendment does not constitute, directly or by implication, an amendment or waiver of any provision of the MTA, or any other right, remedy, power or privilege of any party to the MTA, except as expressly set forth herein.

(emphasis added.) Hence, and in contrast to the MTA, the Amended MTA added to the list of Assumed Liabilities compensatory damages arising from post-Closing accidents involving a motor vehicle sold by Old Chrysler prior to the Closing. All other Excluded Liabilities under the MTA remained unchanged.

---

[10] Copies of the November 19, 2009 Stipulation and Order and Amendment No. 4 are annexed to the *Glueckstein Declaration* as Exhibit C.

The Sale Order also acknowledged New Chrysler's obligation to comply with the National Transportation and Motor Vehicle Safety Act ("NTMVSA"), as applicable to the business of New Chrysler after the Closing, and New Chrysler further

> agreed to assume as Assumed Liabilities under the Purchase Agreement and this Sale Order the Debtors' notification, remedy and other obligations under 49 U.S.C. §§ 30116 through 30120 of the NTMVSA relating to vehicles manufactured by the Debtors prior to the Closing Date that have a defect related to motor vehicle safety or do not to [sic] comply with applicable motor vehicle safety standards prescribed under the NTMVSA. The Purchaser shall not otherwise be liable for any failure by the Debtors to comply with the provisions of the NTMVSA.

(Sale Order ¶ EE.)  Aside from any obligations that the NTMVSA might impose relating to safety concerns, New Chrysler did not undertake a contractual obligation to repair any defects in cars manufactured by Old Chrysler, *Grimstad v. FCA US LLC* (*In re Old Carco LLC*), Adv. Pro. No. 16–01204 (SMB), 2017 WL 1628888, at *4 (Bankr. S.D.N.Y. Apr. 27, 2017), except to the extent required by the factory or extended warranties, and in those cases, New Chrysler's obligation is limited to the cost of parts and labor.[11] *Burton v. Chrysler Group, LLC* (*In re Old Carco LLC*), 492 B.R. 392, 398 (Bankr. S.D.N.Y. 2013).

## B.    The *Motion*

New Chrysler has moved to dismiss the Second Cause of Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure.  The principal issue is whether a claim based on negligence as alleged in the Second Cause of Action is

---

[11]    Given the age of the Vehicle at the time of the accident (over ten years), I assume that any factory or extended warranty had expired long before the sale.  In any event, the Complaint does not assert a repair claim under a factory or extended warranty.

barred by the Sale Order and the Amended MTA. The Vehicle was manufactured and sold by Old Chrysler, the accident occurred post-Closing, and the Plaintiff is now seeking only compensatory damages. The broad definition of Product Liability Claims in the original MTA was never modified, and her Second Cause of Action would seem to come within the scope of the Assumed Liabilities added by Amendment No. 4. New Chrysler nevertheless argues, in the main, that the negligence and failure to warn claims alleged in the Second Cause of Action are based on Old Chrysler's "conduct" rather than its "products," (*see Motion* at ¶ 2), and New Chrysler never assumed liability based on Old Chrysler's "conduct." (*Motion* at ¶ 3 ("FCA US agreed to assume certain limited liabilities with respect to Old Chrysler *products* but did not generally assume liabilities with respect to the *conduct* of Old Chrysler or its employees. . . . There is no basis to force FCA US to defend claims based on Old Chrysler's conduct. . . .") (emphasis in original).)

## DISCUSSION

The legal standard governing the *Motion* requires some brief discussion. The standard that governs a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a familiar one. Briefly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addition to the four corners of the complaint, a court may consider documents subject to judicial notice,

including, in this case, the Sale Order, the MTA and the amendments to the MTA. *Burton*, 492 B.R. at 402.

While these principles apply to the *Motion*, the Court's role is more limited. It acts a "gatekeeper," and must determine whether the Amended Complaint purports to allege a claim that is barred by the Sale Order or the Amended MTA. If the claim passes the gate, the non-bankruptcy court presiding over the action must decide if any surviving claim is a legally sufficient claim under applicable non-bankruptcy law. *See Dearden v. FCA US LLC* (*In re Old Carco LLC*), 582 B.R. 838, 843 (Bankr. S.D.N.Y. 2018); *In re Motors Liquidation Co.*, 568 B.R. 217, 231 (Bankr. S.D.N.Y. 2017).

The issue raised by the *Motion* is whether the Sale Order, but more particularly the Amended MTA, excludes liability for negligence. The answer requires the interpretation of the Amended MTA, which is governed by New York law.[12] The initial inquiry asks "whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)). In interpreting a contract and considering whether ambiguities exist, words should not be read in isolation; a contract's terms should be examined in the context of the whole agreement. *Horowitz v. Am. Int'l Grp., Inc.*, 498 F. App'x 51, 53 (2d Cir. 2012); *In re Young Broad. Inc.*, 430 B.R. 99, 116 (Bankr. S.D.N.Y. 2010). Furthermore, courts must "seek to give '[e]ffect and meaning . . . to every term of [a] contract.'" *XL Specialty Ins. Co. v. Level Glob. Inv'rs, L.P.*, 874 F.

---

[12] New York law governs the interpretation of the MTA, (MTA § 11.08), as well as Amendment No. 4. (§ 6.)

Supp. 2d 263, 284 (S.D.N.Y. 2012) (quoting *Reda v. Eastman Kodak Co.*, 649 N.Y.S.2d 555, 557 (N.Y. App. Div. 1996)).

Although an ambiguity presents a question of fact, where no extrinsic evidence exists the Court may resolve the ambiguity as a question of law. *See Peterson v. Regina*, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) ("[T]he meaning of an ambiguous agreement as to which no extrinsic evidence exists is a question of law to be determined solely by the court." (citing *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000)); *Hartford Acc. & Indem. Co. v. Wesolowski*, 305 N.E.2d 907, 909 (N.Y. 1973) ("[I]f the equivocality must be resolved wholly without reference to extrinsic evidence the issue is to be determined as a question of law for the court.")  The parties conceded at oral argument that they were unaware of any extrinsic evidence that would aid in the interpretation of the relevant provisions in the MTA or Amendment No. 4. Thus, their meaning presents a question of law whether or not they are ambiguous.

The Plaintiff maintains that she has asserted a Product Liability Claim in the Utah District Court that is one of the Assumed Liabilities under Amendment No. 4. A "Product Liability Claim" includes "any Action arising out of, or otherwise relating to in any way in respect of claims for personal injury, . . . , or any other claim or cause of action with respect to, Products or items purchased, sold, consigned, marketed, stored, delivered, distributed or transported by [Old Chrysler]." (MTA Definitions Addendum, at p. 90, *as amended* by Amendment No. 1 to MTA, at ¶ 36.)  "Products means any and all products developed, designed, manufactured, marketed or sold in connection with [Old Chrysler's business] including all parts and components of the foregoing manufactured or licensed by any Selling Group Member." (*Id.*) (internal quotation

marks omitted.)  The Plaintiff's litigation pending in the Utah District Court is an Action that arises out of, relates to or is in respect to a claim for personal injury with respect to a Product sold by Old Chrysler.  It is, therefore, a "Product Liability Claim" within the meaning of the MTA under any reasonable interpretation.

A "Product Liability Claim" is an "Assumed Liability" if, *inter alia*, if it arises from the sale before the Closing Date of a Product manufactured by Old Chrysler or a motor vehicle or component part manufactured by Old Chrysler and distributed and sold as a Dodge solely to the extent that (i) the Product Liability Claim arises directly from a post-Closing Date motor vehicle accident, (ii) is not barred by the statute of limitations, (iii) does not relate to exposure to asbestos or other Hazardous Material and (iv) does not include a claim for punitive damages.  (Amendment No. 4, ¶ 1.)  Here, the post-Closing Date accident arises from the rollover of a Dodge Durango during a motor vehicle accident.  Old Chrysler manufactured, distributed and sold the Dodge prior to the Closing Date.  There is no assertion that the claim is barred by any statute of limitations or involves exposure to asbestos or another Hazardous Material, and the Plaintiff has waived her claim for punitive damages.  Accordingly, the Plaintiff's "Product Liability Claim" is one of the "Assumed Liabilities," under section 2.08(h) that was withdrawn from the category of "Excluded Liabilities" under amended section 2.09(i).  (Amendment No. 4, ¶ 2.)

The *Motion* mischaracterizes the MTA and attempts to draw a distinction between "conduct-related" liabilities and "product-related" liabilities that is not supported by the language of the Amended MTA.  New Chrysler maintains that it assumed liability only for "strict product liability" claims, (*see Motion* at ¶ 35), but that

phrase does not appear in the Amended MTA; instead, New Chrysler assumed liability for "Product Liability Claims." "Product liability" refers to the "legal theory by which liability is imposed on the manufacturer or seller of a defective product," and "can be based on a theory of negligence, strict liability, or breach of warranty," BRYAN A. GARNER, BLACK'S LAW DICTIONARY 1402 (2014); *accord McCarthy v. Olin Corp.*, 119 F.3d 148 163 n. 13 (2d Cir. 1997) ("Traditionally, products liability actions have been allowed to proceed on a number of grounds, including negligence and strict liability."); *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 207 (N.Y. 1983) ("In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability. 'Depending on the factual context in which the claim arises, the injured plaintiff ... may state a cause of action in contract, express or implied, on the ground of negligence, or ... on the theory of strict products liability.'") (quoting *Victorson v. Bock Laundry Mach. Co.*, 335 N.E.2d 275, 277 (N.Y. 1975)).[13] Thus, although claims based on negligence, breach of warranty and strict liability may proceed on different theories and require different proof, *id.* ("Strict products liability for design defect thus differs from a cause of action for a negligently designed product in that the plaintiff is not required to prove that the manufacturer acted unreasonably in designing the product. The focus shifts from the conduct of the manufacturer to whether the product, as designed, was not reasonably safe."), all are still product liability claims. Moreover, New York law treats strict product

---

[13] The Plaintiff also argues that her negligence and failure to warn claims are product liability claims under Utah law. (*Plaintiff's Opposition* at ¶¶ 14-16.) Although Utah law may govern the question of liability and damages, the meaning of "Product Liability Claim" must be interpreted under New York law, the governing law selected by the parties to the MTA and Amendment No. 4. In any event, neither party suggests that a conflict exists between the definitions of "product liability" under Utah and New York law.

liability and negligent design liability as "functionally synonymous." *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 406 (S.D.N.Y. 2013); *accord Denny v. Ford Motor Co.*, 662 N.E.2d 730, 735 (N.Y. 1995) ("[A]n assessment of the manufacturer's conduct [under a strict liability theory] is virtually inevitable, and, as one commentator observed, '[i]n general, * * * the strict liability concept of 'defective design' [is] functionally synonymous with the earlier negligence concept of unreasonable designing.'" (quoting Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law*, 58 N.Y.U.L.Rev. 796, 803 (1983)); *Giunta v. Delta Int'l Mach.*, 751 N.Y.S.2d 512, 515 (N.Y. App. Div. 2002) ("To prevail on a cause of action sounding in negligent design, a plaintiff must prove that the manufacturer failed to exercise reasonable care in designing the product. To prevail on a cause of action sounding in strict products liability, a plaintiff must prove that the product contained an unreasonably dangerous design defect. . . . New York courts have deemed these concepts 'functionally synonymous' with respect to the manufacturer of the product.")

New Chrysler's contrary interpretation is derived primarily from section 2.09(j) of the original MTA. It provides:

> Purchaser shall not assume and shall be deemed not to have assumed, and Sellers shall be solely and exclusively liable with respect to, any Liabilities of Sellers *other than the Assumed Liabilities* (collectively, the "Excluded Liabilities"). For the avoidance of doubt, the Excluded Liabilities include . . . all Liabilities in strict liability, negligence, gross negligence or

>   recklessness *for acts or omissions* arising prior to or ongoing at the
>   Closing.

(MTA § 2.09(j) (emphasis added).)  Seizing on the exclusion of liability for Old Chrysler's "acts and omissions," New Chrysler argues that the Amended MTA excludes negligence claims.

New Chrysler's interpretation ignores the phrase "other than Assumed Liabilities" which restricts the scope of "Excluded Liabilities" under section 2.09(j). Instead, New Chrysler reads section 2.09(j) to limit its liability for "Assumed Liabilities" (here, the Plaintiff's "Product Liability Claim").  (*See Motion* at ¶ 41 ("To the extent a liability expressly assumed in Section 2.08 overlaps with one excluded in Section 2.09, the MTA is clear and unambiguous that any liability assumed in Section 2.08 remains subordinate to the express exclusions contained in Section 2.09, along with all other provisions contained in the MTA.")  This is precisely opposite to the way section 2.09(j) works.  While section 2.09(j) excludes certain Liabilities, the exclusion is subject to and limited by the list of Assumed Liabilities.  New Chrysler's contrary interpretation leads to the absurd result that the Amended MTA excludes liabilities it expressly assumes.  In short, Excluded Liabilities under section 2.09(j) are subject to and limited by the liabilities New Chrysler subsequently (and expressly) assumed under section 2.08(h) in Amendment No. 4 rather than the other way around.

In addition, New Chrysler's interpretation is internally inconsistent and leads to another absurd result.  Section 2.09(j), standing alone, expressly excludes liability for claims that arose from pre-Closing Date sales based on theories of strict liability as well as negligence.  It does not distinguish between the two.  If section 2.09(j) continues to

exclude a negligence claim that nevertheless meets the definition of a "Products Liability Claim" and became an Assumed Liability under Amendment No. 4, it should also exclude a strict liability claim that otherwise meets the definition of a "Product Liability Claim." New Chrysler concedes, however, that the Plaintiff's strict liability claim (her First Cause of Action) is "product-related" and was assumed under Amendment No. 4. New Chrysler has not explained the inconsistency — section 2.09(j) does not support it — and neither the definition of Product Liability Claim nor the expansion of Assumed Liabilities draws a distinction between the two types of claims.

Accordingly, the *Motion* is denied, and the Second Cause of Action is transferred to the Utah District Court. In light of the Court's conclusion, it is unnecessary to consider whether the Complaint sets forth an independent claim that is based on New Chrysler's post-Closing Date conduct. (*See Motion* at ¶¶ 44-48.) Settle Order on notice.

Dated: New York, New York
       June 26, 2018

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge